

FILED
2014 Aug-05  PM 12:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

REBECCA ANN HAMM,                  )
                                   )
            Plaintiff              )
                                   )
    vs.                            )   Case No.  3:13-cv-01278-HGD
                                   )
CAROLYN COLVIN,                    )
COMMISSIONER, SOCIAL SECURITY      )
ADMINISTRATION,                    )
                                   )
            Defendant              )

## MEMORANDUM OPINION

Plaintiff in this action, Rebecca Ann Hamm, protectively filed for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). (Tr. 15). The alleged onset date of her disability was October 1, 2007. Her applications were denied on January 12, 2011, in an initial determination. (*Id.*). Plaintiff timely requested and appeared at a hearing before an administrative law judge (ALJ) on February 22, 2012. Plaintiff was represented by counsel. In a decision dated March 30, 2012, the ALJ found that plaintiff was not disabled. (Tr. 15-22). Plaintiff requested review by the Appeals Council which was denied on

March 4, 2013.  (Tr. 4-6).  The Commissioner's decision is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.      Proceedings Below

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional

capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

The ALJ strictly adhered to this decision-making protocol.  Plaintiff was 47 years old at the time of the ALJ's decision.  Plaintiff has never held a job.  Therefore, the ALJ found that she did not meet the insured status requirements for Title II benefits.  Because the ALJ found that she was not entitled to a period of disability and disability benefits, her application for disability benefits was dismissed.  (Tr. 15). The remaining issue before the ALJ was whether the plaintiff was disabled under

§ 1614(a)(3)(A) of the Social Security Act.  As noted by the ALJ, disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months.  (*Id.*).

## II.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III.   The ALJ's Decision

Under Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity since October 10, 2010. (Tr. 17). Under Step Two, the ALJ found that plaintiff has the following severe impairments: learning disabilities, specifically in reading, written expression and mathematics, by history. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). Because plaintiff has severe impairments, the ALJ proceeded to Step Three of the evaluation process.

Under Step Three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 18).

With regard to this finding, the ALJ stated:

The undersigned adopts the assessment of the state agency consultant with regard to mental functional limitations evaluated under the requirements of Medical Listings 12.02. Arnold Mindinghall, Ph.D., who reviewed the record January 7, 2011, found that the claimant's mental impairments result in mild restriction of daily activities of daily living, moderate difficulties in maintaining social functioning, moderate deficiencies in concentration, persistence, or pace, and no episodes of deterioration or decompensation in work or work-like settings. Therefore, none of the above functional limitations is manifested at the degree required to satisfy a listing.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated episodes of decompensation," each of extended duration, the "paragraph B" criteria are not satisfied.

(Tr. 18-19).

Under Step Four, the ALJ found that plaintiff has the residual functional capacity (RFC) to perform a full range on work at all exertional levels, with the following limitations: she can perform no work with exposure to unprotected heights, dangerous, moving, unguarded machinery, or large bodies of water. She cannot climb ropes, ladders or scaffolding and cannot drive automotive equipment. She also is limited to no greater than unskilled work as defined in the Dictionary of Occupational Titles and in the Social Security Regulations. Furthermore, she should have no more than occasional interaction with supervisors, co-workers and the general public. (Tr. 19).

In making this finding, the ALJ stated that he considered all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of the Social Security regulations. (*Id.*). In considering plaintiff's symptoms, the ALJ followed the two-step process which requires that a determination first be made as to whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce plaintiff's pain or other symptoms. Second, if such are shown to exist, the ALJ must evaluate the intensity, persistence and limiting effects of the plaintiff's symptoms to determine the extent to which they limit plaintiff's functioning. (Tr. 20).

According to the ALJ, plaintiff alleges she cannot work due to learning disabilities, difficulty in standing for long periods, and anxiety with panic attacks. He notes that she testified that she takes naps during the day and sometimes feels drowsy. She stated that, when she is up, she washes dishes and takes care of the house, although she sometimes has to take breaks. (*Id.*).

The ALJ found that the medical records fail to document a sufficient objective basis to accept plaintiff's allegations resulting in functional limitations as wholly credible. He noted that, while she has some underlying mental conditions, the evidence does not support her allegations of severe limitation of function to the

degree that it would preclude the performance of all substantial gainful activity. The medical records do not indicate any work-related limitations, and no source has opined that she cannot perform work at the above-stated RFC. According to the ALJ, the above-listed limitations with regard to social interaction are based on her learning disabilities and difficulties in written expression, mathematics and reading. (*Id.*).

The environmental restrictions regarding work at unprotected heights, etc., were imposed based on plaintiff's subjective complaints only, and were adopted from the report of the state agency medical consultant. (*See* Ex. 8F). (*Id.*).

Plaintiff was born on November 23, 1963, and has a high school education but no past relevant work experience. (Tr. 20-21). The ALJ further found that plaintiff's ability to perform work at all exertional levels has been compromised by non-exertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the ALJ asked a vocational expert (VE) whether jobs exist in the national economy for an individual with the plaintiff's age, education, work experience and RFC. The VE testified that, given all of these factors, the individual would be able to perform the requirements of representative unskilled, medium occupations such as packer, laundry worker and sorter, all of which are jobs existing in the state and national economies in substantial

numbers.  (Tr. 21).  Based on this, the ALJ determined that plaintiff was "not disabled" under the Social Security Act.  (Tr. 22).

## IV.    Plaintiff's Arguments for Reversal

Plaintiff asserts that the ALJ erred in rejecting the opinion of the consultative psychologist, Erin Smith, Psy.D.  Dr. Smith concluded that plaintiff's "overall level of social and adaptive functioning based on cognitive and mental health issues alone, appears to be severely impaired" and that her "ability to maintain gainful full time employment based on cognitive and mental health issues, is severely impaired." (Tr. 139A).  Plaintiff states that the ALJ did not accord any weight to this opinion one way or the other but impliedly rejected it by expressly adopting the opinion of the state agency reviewing psychologist, Dr. Mindinghall, who found moderate deficiencies in maintaining social functioning and concentration, persistence and pace.  (Doc. 13, Plaintiff's Brief, at 7).  Because of this alleged conflict in the evidence, plaintiff asserts that the ALJ should have obtained a consultative examination or obtained the opinion of a medical expert.  Failing this, plaintiff claims that the ALJ's RFC findings are not based on substantial evidence.  (*Id*. at  9).

## V.    Discussion

In her assessment of plaintiff, Dr. Smith noted that plaintiff reported, among other things, academic issues which included poor reading comprehension, poor

listening comprehension, poor spelling, poor math skills, and poor short term memory.  Plaintiff advised Dr. Smith that when she completed high school, she tested out at a third to fourth grade level.  She claimed that she was unable to fill out a check or read paperwork adequately and that she requires assistance with reading comprehension and writing tasks.  She reported that she was in special education throughout her schooling and that she received a certificate of completion.  (Tr. 137-38).

Plaintiff also reported that she is married and lives with her husband of 26 years and has four grown children and nine grandchildren.  Her daily activities include getting out of bed between 7:00 and 8:00 a.m., doing household chores, watching television, and doing laundry and ironing.  She is not able to drive and could not pass the driver's test.  (Tr. 138).

With regard to her mental status, Dr. Smith noted, among other things, that plaintiff's behavior during the interview was appropriate and that she was able to answer questions with appropriate spontaneous verbalizations.  Her speech was normal in rate and tone, and there were no difficulties with articulation or prosody.  (*Id.*).

Her cognition appeared to Dr. Smith to be Borderline to Extremely Low range.  She struggled to provide age appropriate similarities and gave no interpretations to

proverbs.  She was able to register three objects immediately and could recall one after a five-minute delay.  According to Dr. Smith, her attention and concentration were poor.  She could perform simple mental arithmetic calculations which required addition or subtraction of two numbers but could not perform multiplication or division tasks.  Her recent and remote memory was intact, and Dr. Smith believed that she obtained a complete and valid interview with plaintiff.  (*Id.*).

Based on this interview, Dr. Smith concluded that plaintiff's ability to maintain gainful full time employment was severely impaired based on cognitive and mental issues.  However, she also stated that plaintiff's ability to manage any funds which she may receive is adequate.  (Tr. 139A).

In reaching his conclusions, Dr. Mindinghall noted that plaintiff was slow to answer, had problems remembering dates and could not concentrate.  He noted that she claimed to have sleep problems due to pain but no personal care problems.  According to Dr. Mindinghall, plaintiff advised that she prepares simple foods, washes clothes, irons, washes dishes, cleans house, plants flower beds, goes outside daily, shops, pays bills, counts change, handles a savings account, watches TV, goes to church and the store weekly, and plays with her grandchildren.  (Tr. 152).  However, she cannot drive and has problems with memory, concentration, understanding and following instructions.  (*Id.*).

Dr. Mindinghall also reviewed the report of Dr. Smith's interview with plaintiff and her conclusions regarding her ability to work. (*Id.*). In his functional capacity assessment, Dr. Mindinghall stated that plaintiff can understand and remember simple instructions, but not detailed or complex instructions, because of significant learning difficulties. She can carry out a simple task, but not detailed or complex ones for the same reason. He found that she should be able to attend and concentrate on simple and familiar tasks for two hours and that she would benefit from a familiar, repetitive work routine. However, she should not have excessive work responsibilities, quick decision-making, rapid changes or multiple demands. She would benefit from regular rest breaks and a slowed pace but would still be able to maintain an acceptably consistent work pace. (Tr. 156).

Dr. Mindinghall also stated that plaintiff's contact with the public, co-workers and supervisors should be casual and informal with supportive, non-confrontational feedback. Changes in her work setting and routine should be presented gradually and infrequently. She would need help with planning and goal setting. (*Id.*).

Contrary to the assertions of plaintiff, the opinions of Dr. Smith and Dr. Mindinghall are not inconsistent. Dr. Smith opined that plaintiff's overall level of functioning appeared to be severely impaired by her mental health issues. Dr. Mindinghall took these limitations into consideration in arriving at his functional

capacity assessment.  Likewise, the ALJ recognized the significant nature of these impairments and found them to be "severe" at Step Two of the sequential evaluation. He acknowledged that plaintiff's impairments "significantly limit[] [her] physical or mental ability to do basic work activities."  *See* 20 C.F.R. §§ 404.1521(a) and 416.921(a).

While Dr. Smith concluded that plaintiff's ability to maintain gainful full time employment was severely impaired based on cognitive and mental issues, it is important to remember that, under the regulations, the Commissioner is ultimately "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability . . . .  A statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."  20 C.F.R. §§ 404.1527(e) and 416.927(d).

Furthermore, contrary to plaintiff's argument, the ALJ also found that plaintiff's mental impairments caused her ability to maintain gainful employment to be significantly impaired.  In his RFC finding, the ALJ found that plaintiff could perform the full range of work at all exertional levels, but she could perform no work with exposure to unprotected heights, dangerous, moving, unguarded machinery, or large bodies of water.  He also found that plaintiff could not climb ropes, ladders or

scaffolding and could not drive automotive equipment, and that she was also limited to no greater than unskilled work as defined in the Dictionary of Occupational Titles and the Social Security regulations.  He further found that plaintiff should have limited interaction with supervisors, co-workers and the general public.

The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) and 416.968(a).  The significant work-related limitations set out by the Commissioner in the RFC take into consideration plaintiff's "severe" mental limitations.  Although plaintiff notes that Dr. Smith opined that plaintiff's ability to maintain gainful full time employment would be severely impaired, Dr. Smith did not state that plaintiff could not hold full time employment at all.  Plaintiff has failed to show how Dr. Smith's statement shows that plaintiff's limitations are greater than those set out in the RFC.

Plaintiff also notes that the ALJ adopted the psychiatric review technique form (PRTF) findings of Dr. Mindinghall, the state agency psychological reviewing consultant, but did not adopt his mental RFC findings.  (*See* Doc. 13, Plaintiff's Brief, at 7).  The ALJ stated that he was adopting the assessment of the state agency consultant with regard to mental functional limitations evaluated under the requirements of the listing under Step Three of the sequential evaluation process, and

he noted that Dr. Mindinghall found that plaintiff's mental impairments resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate deficiencies in concentration, persistence or pace, and no episodes of deterioration of decompensation in work or work-like settings. (Tr. 18-19, 150). Although not accorded the same controlling weight or deference as the opinions of treating physicians, the findings of state agency medical consultants regarding the mature and severity of plaintiff's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review. *See* SSR 96-6p, 1996 WL 374180 (S.S.A.). A review of the ALJ's findings reflects that the ALJ did consider the evidence from Dr. Mindinghall, and these findings lent further support to the ALJ's determination that plaintiff is not disabled.

Furthermore, the ALJ's RFC determination did, in fact, accommodate many of Dr. Mindinghall's limitations. (Tr. 19, 156). Plaintiff was limited to unskilled work, consistent with Dr. Mindinghall's statement that plaintiff would be able to understand only simple instructions and carry out simple tasks. Likewise, her limitation of concentration on simple and familiar tasks to two-hour periods is accommodated by regular breaks and lunch periods. In addition, Dr. Mindinghall opined that, despite her need for regular breaks, plaintiff would be able to maintain an acceptably consistent pace. (Tr. 156).

## VI.    Conclusions

This court's basis for judicial review of the Secretary's determinations is provided by 42 U.S.C. § 405(g) (1988).  The Secretary's findings of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Martin*, 894 F.2d at 1529.  Accordingly, the scope of review of the Secretary's factual determinations is limited to whether its findings were supported by "substantial evidence." *Martin,* 894 F.2d at 1529; *Bloodsworth*, 703 F.2d at 1239.  "Substantial evidence is defined as more than a scintilla; *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  This court must not reweigh the evidence nor should substitute its discretion for that of the ALJ.  *See id.; Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Even if the evidence preponderates against the Secretary's decision, it must be affirmed if the decision is supported by substantial evidence.  *Bloodsworth*, 703 F.2d at 1239 (citations omitted).

There was substantial evidence that plaintiff could perform unskilled work with the significant limitations as set out in plaintiff's RFC.  The ALJ provided a detailed and adequate reason for his findings.  Accordingly, upon review of the administrative

record, and considering all of plaintiff's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Therefore, that decision is due to be AFFIRMED.  A separate order will be entered.

DONE this 5th day of August, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE